# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KIMBERLY N., | ) |
| Plaintiff, | ) No. 20 cv 2029 |
| v. | ) Magistrate Judge Susan E. Cox |
| ANDREW M. SAUL, Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kimberly N.[1] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her disability insurance benefits under Title II of the Social Security Act. Plaintiff has filed a Memorandum in Support of Motion for Summary Judgment, which the Court construes as a motion for summary judgment [Dkt. 19]; the Commissioner has filed a cross-motion for summary judgment [Dkt. 20]. For the reasons discussed below, the Court remands this matter for further proceedings consistent with this Memorandum Opinion and Order. Plaintiff's Motion for Summary Judgment [dkt. 19] is GRANTED. The Commissioner's Motion for Summary Judgment [dkt. 20] is DENIED.

**I.  Background**

   **a.  Procedural History**

Plaintiff filed both a Title II application for disability and disability insurance benefits and a Title XVI application for supplemental security income on October 24, 2013. [Administrative Record ("R") 154.] After proceeding through the administrative process, Administrative Law Judge ("ALJ") Lovert F. Bassett issued an unfavorable decision on December 30, 2015, determining that Plaintiff

---

[1] In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name(s).

had not been disabled through the date of his decision. [R. 154-165.] Plaintiff requested Appeals Council review, which was denied on February 7, 2017. [R. 172-76.] It does not appear Plaintiff ever filed suit related to ALJ Bassett's decision, although it was a final decision. 20 C.F.R. §404.981.

On May 3, 2017, Plaintiff again filed a Title II application for disability and disability insurance benefits, alleging an onset date of disability as of December 31, 2015 (the day after ALJ Bassett's unfavorable ruling). [R. 10.] Plaintiff's claims were denied initially and upon reconsideration. *Id.* Plaintiff appealed those denials and appeared at a November 20, 2018 Administrative Hearing before a different ALJ, Edward P. Studzinski. [R. 10, 74-121.] On April 22, 2019, ALJ Studzinski issued an unfavorable decision, concluding that Plaintiff had not established she was disabled during the period from her onset date through her date last insured. [R. 13-24.] Plaintiff requested Appeals Council review, which was denied on October 7, 2019. [R. 1 6.] Thus, the Decision of the Appeals Council is the final decision of the Commissioner. 20 C.F.R. §404.981. Plaintiff, through counsel, filed the instant action on March 30, 2020, seeking review of this decision of the Commissioner. [Dkt. 1.]

### b. The ALJ's Decision

On April 22, 2019, the ALJ issued a written decision denying Plaintiff disability benefits. [R 10-25.] At Step One, the ALJ determined that Plaintiff did not engage in substantial gainful activity since her alleged onset date of December 31, 2015 through her date last insured, December 31, 2018. [R 12.] At Step Two, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the cervical spine; cervicogenic headache; depression; and anxiety. [*Id.*] The ALJ found Plaintiff's stress incontinence to be a nonsevere impairment. [R. 12-13.] At Step Three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. [R 13-15.]

Before Step Four, the ALJ found that Plaintiff had the residual functional capacity ("RFC")

to perform light work, with the exceptions that she can lift and carry 20 pounds occasionally; lift and carry 10 pounds frequently; occasionally climb ladders, ropes, or scaffolds; frequently kneel, crouch, and crawl; and perform fine and gross manipulation frequently but not constantly. [R. 15.] The ALJ determined Plaintiff has no limitations in the total amount of time she is able to sit, stand, or walk throughout an 8-hour workday, but that she needs to alternate her position (while remaining on-task) between sitting, standing, and walking for no more than five minutes out of every half hour. *Id.* The ALJ limited Plaintiff to working in non-hazardous environments, and found Plaintiff incapable of working where she would be exposed to excessive noise or bright, flashing lights exceeding what is generally encountered in an office-type work environment. *Id.* Further, the ALJ determined Plaintiff should avoid concentrated exposure to pulmonary irritants such as fumes, odors, dusts, gases, and poor ventilation. *Id.* The ALJ limited Plaintiff to work requiring only an average production pace. *Id.* The ALJ further limited Plaintiff to work in noncrowded and unhectic environments where she can perform simple, routine work with no more than simple decision-making, including no significant self-direction, no multi-tasking, no more than occasional and minor changes in the work setting, and work requiring the exercise of only simple judgment. *Id.* The ALJ fount that Plaintiff is not to work in direct public service, in person or over the phone, although she can tolerate brief and superficial interaction with the public which is incidental to her primary job duties; she can tolerate brief and superficial interaction with supervisors and co-workers, but she is not to engage in tandem tasks. *Id.*

The Plaintiff had no past relevant work applicable to Step Four, so the ALJ proceeded to Step Five. [R. 21.] At Step Five, the ALJ found there were jobs that existed in significant numbers in the national economy Plaintiff could perform. [R 21-25.] Specifically, the ALJ relied upon testimony from vocational expert ("VE") Julie Bose in concluding that Plaintiff "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." [R. 25.] Because of this determination, the ALJ found Plaintiff not disabled under the Act. [*Id.*]

3

**II.     Social Security Regulations and Standard of Review**

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. ALJs are required to follow a sequential five-step test to assess whether a claimant is legally disabled. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; and (3) whether the severe impairment meets or equals one considered conclusively disabling such that the claimant is impeded from performing basic work-related activities. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920(a)(4)(i)-(v). If the impairment(s) does meet or equal this standard, the inquiry is over and the claimant is disabled. 20 C.F.R. § 416.920(a)(4). If not, the evaluation continues and the ALJ must determine (4) whether the claimant is capable of performing his past relevant work. *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981). If not, the ALJ must (5) consider the claimant's age, education, and prior work experience and evaluate whether she is able to engage in another type of work existing in a significant number of jobs in the national economy. *Id.* At the fourth and fifth steps of the inquiry, the ALJ is required to evaluate the claimant's RFC in calculating which work-related activities she is capable of performing given his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). In the final step, the burden shifts to the Commissioner to show that there are jobs that the claimant is able to perform, in which case a finding of not disabled is due. *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir. 1984).

In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence exists when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). While reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts in the

record, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Young v. Barnhart*, 362 F.3d at 1001. Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citation omitted). The Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535,539 (7th Cir. 2003); *see also*, 42 U.S.C.§ 405(g).

## III. Discussion

The Plaintiff has mounted several challenges to the ALJ's decision in this matter. The Court now takes up the issues of (a) the ALJ's Step Five ruling, where the ALJ found Plaintiff capable of performing other work existing in significant numbers in the national economy; and (b) the ALJ's RFC assessment, which fails to include a limitation related to Plaintiff's inability to rotate, flex, or extend her neck or trunk repetitively, despite having included these limitations in his hypothetical to the VE. The Court remands on these bases.

### a. The ALJ's Step Five Ruling Relied on Unreliable and Unverifiable VE Testimony

The Commissioner bears the burden at Step Five to demonstrate the claimant can successfully perform a significant number of jobs that exist in the national economy. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). Testimony from a vocational expert can help the ALJ satisfy this burden, but only if that testimony is reliable and verifiable. *Overman v. Astrue*, 546 F.3d 456, 464 (7th Cir. 2008); *Herrmann v. Colvin*, 772 F.3d 1110, 1114 (7th Cir. 2014).

In general, the role of a vocational expert is to provide information regarding the kinds of work and the number of jobs in the national economy a hypothetical person with certain limitations can perform.[2] *Pagos v. Colvin*, 2015 WL 1502923, at *7 (N.D. Ill. Mar. 27, 2015); *Pelfrey v. Com'r of Soc.*

---

2   See Section III(b), *infra*, for a short discussion of this "hypothetical" individual.

5

*Sec.*, 2010 WL 909134, at *4 (S.D. Ohio Mar. 10, 2010); *see also*, *Sample v. Schweiker*, 694 F.2d 639, 643 (9th Cir. 1982) (role of a VE is to "translate[ ] factual scenarios into realistic job market probabilities"). Although a VE is entitled to rely on various methods and sources of data, the foundation for the VE's opinions must be adequate and VE's testimony must be reliable. *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002); *Chavez v. Berryhill,* 895 F.3d 962, 968 (7th Cir. 2018) ("In the context of job-number estimates, [the Seventh Circuit has] observed that the substantial evidence standard requires the ALJ to ensure that the approximation is the product of a reliable method.") Reliability refers to the consistency and repeatability of a result. *Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 419 (7th Cir. 2005) ("An expert must offer good reason to think that his approach produces an accurate estimate using professional methods, and this estimate must be testable. Someone else using the same data and methods must be able to replicate the result.") "[A] finding based on unreliable VE testimony is equivalent to a finding that is not supported by substantial evidence and must be vacated." *Chavez,* 895 F.3d at 968 (citing *Britton v. Astrue*, 521 F.3d 799, 803 (7th Cir. 2008)). In addition to reliability, the Seventh Circuit has also held that verifiability is another hallmark of an expert's testimony. *Herrmann*, 772 F.3d at 1114 ("[w]e do not know how the vocational expert in this case calculated the numbers to which he testified. Nothing in the record enables us to verify those numbers, which the administrative law judge accepted.")

In determining whether a claimant can "make an adjustment to other work," 20 C.F.R. § 404.1520(a)(4)(v), ALJs "commonly…pose a series of hypothetical questions that describe the claimant's conditions and limitations, and the VE will testify to the number of jobs that the claimant can perform based on those limitations." *Simila v. Astrue*, 573 F.3d 503, 520 (7th Cir. 2009). Here, the ALJ here did pose such hypothetical scenarios to the VE, and the VE offered to give examples of three, light, unskilled, SVP 2 jobs that would fulfill the ALJ's hypothetical. [R. 104.] The VE then proceeded to offer only two positions: mail clerk (DOT #209.687-026) with national numbers of

6

32,800 and label coder (DOT #920.587-014) with national numbers of 37,800.[3, 4]

The VE then answered questions from Plaintiff's attorney as to how she came up with those job numbers, stating, "I use Skill Tran as a base, and but (sic) I look at specific DOT numbers. I only look at full-time jobs, and [I] look at the industries in which the jobs are performed in my experience…my numbers are going to look different than what Skill Tran does, because I change the industries to reflect the industries that the jobs are currently being performed in." [R. 112-13.] Basically, the ALJ testified she employs a three-step process she created, wherein she uses Skill Tran to "look up the DOT code numbers, the industries," then "subtract[s] any part-time" jobs, then "remove[s] the industries [she] believe[s] don't exist, and add ones where the positions do exist." [R. 113-14.] The ALJ testified that she "update[s] the industries approximately once a year," but that she does not do this in writing.[5]

While these explanations seemingly might pass muster for how she came to this data, the VE ultimately later admits her job availability numbers are not able to be replicated (*i.e.*, not reliable) or verified. Specifically, the VE's testimony in the instant matter, by her own admission, is unverifiable by anyone other than her. [R. 118.] When questioned by the Plaintiff's attorney about the verifiability

---

[3] Offering two occupations is contrary to the agency's own handbook given to vocational experts, which states: "If you respond to a hypothetical that there are occupations the hypothetical individual can perform given the facts assumed, the ALJ will then ask you to give examples of those occupations. You should be prepared to provide: At least three examples (if possible)…" SSA, Vocational Expert Handbook 37 (June 2020), https://www.ssa.gov/appeals/public_experts/Vocational_Experts_(VE)_Handbook-508.pdf (last accessed April 23, 2021).

[4] Even if the VE's job numbers were reliable (they are not, as discussed further in the instant section), these positions may not qualify as a significant number of jobs in the national economy. Specifically, see *John C. v. Saul*, 2021 WL 794780, at *5-6 (C.D. Ill. Mar. 2, 2021), for an excellent compilation and discussion of cases within this Circuit in absence of the Seventh Circuit having affirmatively established a threshold number of jobs in the national economy that qualifies as significant. The *John C.* decision also highlights that the *Dorothy B. v. Berryhill*, 2019 WL 2325998, at *7 (N.D. Ill. May 31, 2019) case cited by the Commissioner is the single district court case within this Circuit where a number below 20,000 amounted to a significant number of jobs in the national economy. *Id.* at *5. Similar to *John C.*, the Commissioner here has not pointed to any binding authority holding that these numbers of jobs are significant, "and with district courts coming to varying conclusions, the Court is not persuaded that the number is significant nationally." *Id.* at *6.

[5] The Court is left wondering exactly how this is done if not in writing, leading to further concerns about replicability/reliability.

of her job availability data, this was the VE's testimony:

> Q. So, what I'm trying to understand is – so now you're saying there's no way to verify the job numbers that you're giving, is that accurate?
> A. Not as we sit here today, no.
> Q. How would I?
> A. You won't at all. You're not a vocational expert. I can verify it, but you can't.

[R. 118.]

By her own admission, it is plain the VE's numbers do not bear the hallmarks for expert testimony contemplated by the Seventh Circuit. It is impossible for anyone but the VE to assess their accuracy. The process requires more than just the *ipse dixit* of the vocational expert and, in fact, requires more than just a cabal of vocational experts who can calculate these figures. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("nothing…requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."). In absence of the VE explaining her methods in a way that would allow others verify their reliability, the vocational expert testimony here is more akin to magic than science.

Moreover, because the Commissioner bears the burden at Step Five, "once plaintiff objected to the basis for the VE's testimony, the ALJ was obligated to make an inquiry to determine whether her conclusions are reliable." *Russell v. Berryhill*, 2017 WL 3704354, at *6 (S.D. Ill. Aug. 28, 2017) (citing *Donahue*, 279 F.3d at 446). While the ALJ made three inquiries of the VE in this regard, none of these questions negated the VE's admission that her testimony was unverifiable.[6, 7]

---

[6] Once Plaintiff's counsel objected to the reliability of the VE's testimony, the ALJ asked whether the VE had "an opinion as to whether or not your manner of coming up with those numbers is consistent with the best practices within your industry?" [R. 115.] While the VE answered in the affirmative and also volunteered that "there are several of my colleagues that come up with numbers in the same manner," this answer, combined with her testimony that her results are not verifiable, basically confirms that 'everyone else makes it up out of "whole cloth" too.' *See Donahue*, 279 F.3d at 446 (every decision in the administrative process must be supported by substantial evidence; "[e]vidence is not 'substantial' if vital testimony has been conjured out of whole cloth."). The ALJ also confirmed with the VE that her numbers are, by necessity, an estimate versus an exact count. [R. 117.] Finally, the ALJ confirmed the VE's testimony did not conflict with the Dictionary of Occupational Titles. [R. 119.]

[7] In the nearly three and a half pages of explanation the ALJ devotes to discussing VE Bose's testimony [R. 21-25],

8

Regardless of whether, as the Commissioner asserts, "the VE is a qualified expert; she explained her methodology on the record; she relied upon the provided RFC, her knowledge of the field of vocational rehabilitation, and her methodology of the job availability; and her estimates were based in part upon the publications of which the agency takes administrative notice," her testimony must still be reliable and verifiable. [Dkt. 21, p. 14]; *Overman*, 546 F.3d at 464; *Herrmann*, 772 F.3d at 1114. The VE's testimony was neither and therefore, the ALJ relied on it in error. Thus, the ALJ's Step Five decision was not supported by substantial evidence. *Richardson*, 402 U.S. at 401. Remand is proper on this basis.

**b.     The ALJ Failed to Build a Logical Bridge Between his Hypotheticals and the RFC**

Plaintiff also argues that the ALJ included a hypothetical question to the VE that included an inability to rotate, flex, or extend one's neck or trunk repetitively, yet erroneously failed to include such a restriction in Plaintiff's RFC. [Dkt. 19, pp. 9-10.] The Court agrees this is an error, and remands on this basis as well.

In posing a particular hypothetical, an ALJ does not confine herself to making an RFC determination mirroring the hypothetical limitations as posed to the VE. However, the Seventh Circuit has made clear that an ALJ's hypotheticals "describe the *claimant's* conditions and limitations." *Simila*, 573 F.3d at 520 (emphasis added). An ALJ's questions to a VE are not merely hypotheticals "conjured out of whole cloth" with no relation to the claimant at hand. *See Donahue*, 279 F.3d at 446.[8]

At the administrative hearing of this matter, the ALJ pointedly solicited from the VE her opinions concerning Plaintiff's inability to "perform repetitive rotation, flexion, or extension of the

---

the ALJ did his level best to explain why the VE's testimony was reliable, yet this also does nothing to erase VE Bose's admission her data cannot be reproduced.

[8]   The Court recognizes *Donahue* ruled on testimony given by a vocational expert and not on the hypothetical questions an ALJ posed to a VE. However, the Court finds it would frustrate the whole purpose of posing hypotheticals to VE's if an ALJ's questions were "conjured out of whole cloth" with no relation to the claimant at hand.

neck or trunk" meaning the ALJ did specifically consider this issue as potentially stemming from Plaintiff's medical record. [R. 102-03]; *Gregory W. v. Saul*, 2020 WL 4816075, at *5 (N.D. Ill. Aug. 18, 2020) (collecting cases for proposition that ALJ does consider a particular limitation specifically because ALJ asks VE to consider that limitation in rendering opinions). While it is not for the Court to say whether the medical record could conceivably support such limitations, it appears the ALJ had reason to believe Plaintiff might require such limitations, or there would be no reason to have posed this hypothetical to the VE. Presumably, this inability to "perform repetitive rotation, flexion, or extension of the neck or trunk" hypothetical described Kimberly N's conditions and limitations and not some other claimant or scenario plucked from thin air.

However, the ALJ then failed to come to any conclusion regarding these limitations he asked the VE to consider, despite adopting the VE's job availability numbers based on an individual who had these very restrictions. Thus, the logical bridge is entirely missing here with respect to the reasons the ALJ ultimately omitted these limitations from the RFC. While at first blush this may seem to be a harmless error because the VE did testify there would be available jobs for a person with these limitations [R. 102-04], the Court finds that this error, when compounded with the unreliability and unverifiability of the VE's job availability numbers, is cause for remand.

## IV. Conclusion

For the foregoing reasons, the Court must reverse and remand for proceedings consistent with this Memorandum Opinion and Order. At this time, the Court offers no opinion as to the other alleged bases of error in the ALJ's decision as raised by Plaintiff. Plaintiff's Motion for Summary Judgment [dkt. 19] is GRANTED. The Commissioner's Motion for Summary Judgment [dkt. 20] is DENIED.

Entered: 4/29/2021

_____
Susan E. Cox,
United States Magistrate Judge